UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| C.M., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 19 C 3454 |
| | ) | |
| AETNA INC., COVENTRY | ) | Judge Charles P. Kocoras |
| HEALTHCARE INC., COVENTRY | ) | |
| HEALTHCARE OF ILLINOIS, INC. and | ) | |
| MHNet BEHAVIORAL HEALTH INC., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Before the Court is Defendants Aetna Inc. ("Aetna"), Coventry Healthcare Inc. ("CH"), Coventry Healthcare of Illinois, Inc. ("CHI"), and MHNet Behavioral Health Inc.'s ("MHNet") (collectively, "Defendants") motion to dismiss Counts II and III of Plaintiff C.M.'s amended complaint under Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the Court will grant the motion.

## STATEMENT

For purposes of this motion, the Court accepts as true the following facts from the amended complaint. *Murphy v. Walker*, 51 F.3d 714, 717 (7th Cir. 1995). All reasonable inferences are drawn in Plaintiff's favor. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).

C.M. ("Plaintiff"), is a 59-year-old, single woman who currently resides in Berkshire County, Massachusetts, and suffers from a long-term mental illness. In 2015, while residing in Glencoe, Illinois, Plaintiff purchased a health insurance policy under the CoventryOne Individual PPO Member Contract ("the Contract") through the Illinois Marketplace.

Defendant Aetna is a diversified nationally-managed health care company that sells health care insurance plans through Medicare. Defendant CH is a Delaware corporation owned by Aetna Health Holdings, LLC, with a corporate office in Champaign, Illinois. Defendant CHI is a wholly-owned subsidiary of CH, with a corporate office in Champaign, Illinois. Defendant MHNet is also owned by Aetna and maintains a principal corporate office in Austin, Texas. It administers claims for mental health benefits under the Contract.

While in New York in early 2016, Plaintiff's mental health dramatically deteriorated. Her treating physician determined that the best treatment suitable for Plaintiff was an "informal admission" to an inpatient mental health facility—i.e., an admission without a liberty restriction. Accordingly, on March 9, 2016, Plaintiff was admitted on a non-confining basis to an inpatient, residential mental health facility located in Massachusetts ("the Facility"). Following her admission, the Facility conducted an in-depth clinical examination and evaluation and diagnosed Plaintiff with several mental health disorders. Plaintiff's initial "anticipated length of stay"

2

was six weeks for "evaluation and treatment," but a longer-term treatment was later found necessary.

On March 11, 2016, the Facility contacted CHI to request confirmation of benefits for Plaintiff's treatment. It requested certification for long-term treatment up to one year, subject to periodic review with the opportunity to reapply after one year, as permitted by the Contract. On March 15, 2016, MHNet sent a letter to Plaintiff's home address in Glencoe, Illinois, notifying her that the request for health benefits, including coverage at in-network rates, was denied. MHNet reasoned that Plaintiff's informal admission to the Facility was "not medically necessary and, therefore, not authorized for coverage" under the Contract.

Plaintiff alleges that Defendants denied her benefits without conducting any clinical examination or consulting with her treating physicians about the basis for her informal admission or the medical necessity of such treatment. Plaintiff accordingly filed an internal appeal to CHI, but her appeal was denied.

In December 2016, Plaintiff sought "external review" of her appeal with the Illinois Department of Insurance ("IDOI"), which reversed CHI's initial denial of Plaintiff's benefits. The IDOI's reversal, however, was limited to benefits Plaintiff received between March 9 and May 31, 2016. The IDOI did not address Plaintiff's appeal from the denial of benefits at in-network rates because Defendants failed to identify any in-network providers of similar treatment.

3

According to Plaintiff, Defendants failed to provide a list of in-network providers capable of providing inpatient mental health services on a non-confining basis, despite repeated attempts by her representatives to obtain such a list. Once Plaintiff received the list from Defendants—14 months after her initial request—she contacted all seven providers on the list only to find that none could provide the requested inpatient services.

Plaintiff then filed a second internal appeal with Defendants but was again denied. Once more, she sought external review by the IDOI which denied her appeal. According to Plaintiff, the IDOI's denial was based on the application of Defendants' proprietary tool known as the Level of Care Assessment Tool ("LOCAT").[1] Defendants had used this tool to deny Plaintiff's benefits in the first two instances.

Applying the LOCAT yields a numerical score that the insurer uses to determine the necessity of an insured's placement. But according to Plaintiff, the LOCAT has never been certified under scientifically based standards for use in assessing the medical necessity of mental health treatments. Plaintiff further alleges that the LOCAT's table of placement scores does not include a score that would ever result in coverage for inpatient treatment on a non-confining basis. Accordingly, the

---

[1] Plaintiff alleges that the LOCAT does not take into consideration the future time frame or anticipated future course of the patient's illness or its complications. Instead, the tool focuses on placements designed to treat an insured's symptoms upon "presentation of the illness" and does not consider any medically necessary treatment that would address the underlying mental disorder to prevent further deterioration.

LOCAT is used to deny benefits like those needed by Plaintiff systematically. Nevertheless, the Contract did not disclose that mental health services of the kind she requested were not covered, which Plaintiff claims is a material fact that Defendants had a duty to disclose.

Based on these events, Plaintiff brought this action against Defendants asserting breach of contract in Count I, fraud under the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, *et seq.*, ("ICFA") in Count II, and common-law fraud in Count III. On July 22, 2019, Defendants filed a motion to dismiss Plaintiff's fraud claims in Counts II and III under Federal Rule of Civil Procedure 12(b)(6).

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the sufficiency of the complaint, not the merits of the case." *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 878 (7th Cir. 2012). The allegations in the complaint must set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A plaintiff need not provide detailed factual allegations, but it must provide enough factual support to raise its right to relief above a speculative level. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A claim must be facially plausible, meaning that the pleadings must "allow . . . the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The claim must be

5

described "in sufficient detail to give the defendant 'fair notice of what the . . . claim is and the grounds upon which it rests.'" *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient to withstand a 12(b)(6) motion to dismiss. *Iqbal*, 556 U.S. at 678.

When claiming fraud, a party "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). The requirement that fraud is pled with particularity "ensures that plaintiffs do their homework before filing suit and protects defendants from baseless suits that tarnish reputations." *Pirelli Armstrong Tire Corp. Retiree Med. Ben. Trust v. Walgreens Co.*, 631 F.3d 436, 439 (7th Cir. 2011). This requirement is not rigid, and what must be alleged will vary depending on the facts of the case. *Id.* at 442. The heightened pleading standard applies to all *allegations* of fraud (such as a misrepresentation), not merely *claims* labeled fraud. *Id.* at 447.

Defendants urge the Court to dismiss Plaintiff's ICFA[2] and common-law fraud[3] claims, arguing that the alleged deception or misrepresentation is duplicative of

---

[2] To state an ICFA claim, a plaintiff must allege (1) an act or practice by the defendant that is deceptive or unfair, (2) defendant intended that plaintiff rely on the act, (3) the deceptive or unfair act occurred in the course of conduct involving trade or commerce, and (4) it caused plaintiff actual damage. *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 574 (7th Cir. 2012); *Kim v. Carter's Inc.*, 598 F.3d 362, 365 (7th Cir. 2010).
[3] To state a claim for common-law fraud, a plaintiff must allege that defendant (1) made a false statement or omitted a material fact, (2) knew or believed the statement was false, (3) intended to induce plaintiff to

Plaintiff's breach-of-contract claim.[4] The only issue before the Court is, therefore, whether the alleged deception is distinct from the alleged contractual breach.

A breach-of-contract claim dressed up in the language of fraud does not state a fraud claim under either the ICFA or the common law. *See Greenberger v. GEICO Gen. Ins. Co.*, 631 F.3d 392, 395 (7th Cir. 2011) ("[F]raud claims must contain something more than reformulated allegations of a contractual breach. . . . [B]reach-of-contract allegations dressed up in the language of fraud . . . cannot support statutory or common-law fraud claims.") (*citing Avery v. State Farm Mut. Auto. Ins. Co.*, 296 Ill.Dec. 448 (2005) ("A breach of contractual promise, without more, is not actionable under the Consumer Fraud Act.")). "The deceptive act must involve something more than the promise to do something and a corresponding failure to do it." *M.W. Widoff, P.C. v. Encompass Ins. Co. of Am.*, 2012 WL 769727, at *4 (N.D. Ill. 2012).

This Court has previously found that plaintiffs cannot proceed on ICFA or fraud claims against their insurers where they allege that deception occurred merely because the insurer "failed to pay the claim, made 'bad faith' demands for documents, conducted a burdensome investigation, delayed in resolving the claim, rested the denial of the claim on the actions or inactions of [the insured] or its agents, and represented in its

---

act, (4) plaintiff acted in reliance on the truth of defendant's statement and (5) was damaged as a result of said action. *Weidner v. Karlin*, 342 Ill.Dec. 475 (2010).

[4] Defendants alternatively argue that Plaintiff's deception allegations fail to meet Rule 9(b)'s heightened pleading standards. Because the Court grants Defendants' motion on the grounds that the misrepresentation is not distinct from the breach, we decline to address this argument.

7

policy that 'it would pay valid claims,' when in fact it has not paid." *W. Howard Corp. v. Indian Harbor Ins. Co.*, 2011 WL 2582353, at *5 (N.D. Ill. 2011). Such conduct is nothing more than "denial of benefits and breach of contract, with an accompanying bad faith claim under § 155." *Id.*; *See also New Park Manor, Inc. v. N. Pointe Ins. Co.*, 2013 WL 5408856, at *4–7 (N.D. Ill. 2013) (dismissing ICFA claim alleging plaintiff submitted proof-of-loss based on insurer's settlement evaluation figures, but insurer demanded more documentation; an examination under oath of plaintiff's principals; ultimately rejected the claim; and accused plaintiff of fraud, claim inflation, and failure to produce documents in support of its claims).

In contrast, we found deception allegations sufficiently distinct from a breach of contract allegation where an insurer "[strung] an insured[] along with the intimation that things were progressing toward a resolution when, in reality, there [was] no end in sight" because the insurer kept "making unreasonable and irrelevant demands, and never provid[ed] a definite answer" regarding coverage. *Gen. Ins. Co. of America v. Clark Mali Corp.*, 2010 WL 1286076, at *4 (N.D. Ill. 2010); *See also Burress-Taylor v. Am. Sec. Ins. Co.*, 2012 Ill. App. 1st 110554 (2012) (ICFA claim not preempted by Section 155 where allegations suggested an insurance company taking "a series of dilatory, deceptive and punitive maneuvers to mask [its] nonperformance" and "doing all in its power to wear down the insureds and to put off indefinitely a frank decision regarding coverage and the reasons for the denial").

8

Plaintiff alleges that Defendants knowingly used the LOCAT to automatically and systematically deny her claims for lack of medical necessity. She also alleges that the Contract misrepresented the fact that Defendants had no in-network providers for inpatient mental health services on a non-confining basis because none of the providers listed by Defendants provided such services.

Neither allegation suffices to support Plaintiff's fraud claims because they are not distinct from the alleged breach. Plaintiff relies on these same facts to also allege her breach-of-contract claim.[5] And Plaintiff's reliance on *Wheeler v. Assurant Specialty Property* for support is to no avail. 125 F. Supp. 3d 834 (N.D. Ill. 2015). In *Wheeler*, the insurance company represented that it was complying with its contractual obligations when, in fact, it planned to string the plaintiff along until it could secure a second expert who would deny most of the claimed loss.

No distinct deceptive acts of that nature occurred here. Plaintiff does not allege Defendants were stringing her along with no frank decision as to her coverage. To the contrary, the facts alleged in support of Plaintiff's fraud claims are the same as those supporting her breach-of-contract claim, including Defendants' frank denial of

---

[5] Plaintiff's response brief argues that she was induced to purchase the Contract because it represented that benefits for inpatient mental health services would be covered when, in fact, they were not. But Plaintiff's amended complaint does not make this allegation, and she cannot use her response brief as an opportunity to amend her complaint. *Foster-Jenkins v. Rogers Auto Grp.*, 2019 WL 4750304, at *2 (N.D. Ill. 2019) ("It is well established that a plaintiff cannot amend the complaint through a response brief.") (citing *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 448 (7th Cir. 2011)).

9

her coverage using the LOCAT and failure to cover inpatient services as promised under the Contract. As such, the Court finds that Plaintiff does not allege fraudulent or deceptive acts that are sufficiently distinct from her breach-of-contract claim. We, therefore, grant Defendants' motion to dismiss Counts II and III on this basis.

## CONCLUSION

For the reasons mentioned above, the Court grants the Defendants' motion to dismiss. It is so ordered.

Dated: 11/7/2019

_____
Charles P. Kocoras
United States District Judge